**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MONTRELL VINES,

    Petitioner,

  v.

A.P. KANE, Warden,

    Respondent.
                                    /

No. C 05-5316 JSW (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

### INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254. As grounds for habeas relief Petitioner alleges, *inter alia*, that defense counsel rendered ineffective assistance. For the reasons set forth below, the petition is DENIED.

### STATEMENT

In 2000, Petitioner was convicted by a San Francisco County Superior Court jury of one count of attempted murder (Cal. Pen. Code §§ 664/187), one count of assault with a semiautomatic firearm (*id.* § 245(b)), and of enhancements attached to each conviction for using a firearm in the commission of a felony, and for inflicting great bodily injury (*id.* §§ 12022.53, 12022.5(b),

12022.7(a)).[1] The trial court sentenced Petitioner to a total term of forty-seven years-to-life in state prison, a sentence that included twenty-one years for the assault conviction, and to life in prison, with an additional twenty-five year term for causing great bodily injury with a firearm, for the attempted murder conviction.[2] Petitioner appealed. The California Court of Appeal for the First Appellate District affirmed the judgment. (Ans., Ex. 6 (*People v. Vines*, No. A096285, 2003 WL 649144 (Cal. Ct. App. Feb. 28, 2003)) at 1.) The California Supreme Court denied his petition for review and his petition for a writ of habeas corpus. (Pet. at 3, 4.)

Evidence presented at trial showed that in June 2000, Petitioner, while driving a burgundy car, shot at two persons in another car, Nieisha J. and her thirteen-year-old brother Dominick. Nieisha saw Petitioner, whom she had known for over a year, get "out on the rear passenger side of the burgundy car, and beg[in] shooting at [her], from a distance of approximately eight feet." Nieisha was shot twice, Dominick was shot once, and the police recovered nine shell casings from the crime scene. (Ans., Ex. 6 at 1, 2, 3.)

As grounds for federal habeas relief, Petitioner alleges that (1) his conviction for assault with a semiautomatic firearm violated due process because that offense is not a lesser-included offense of attempted murder; (2) admission of certain police testimony violated Petitioner's due process rights; (3) trial counsel's actions violated Petitioner's right to effective assistance of counsel; (4) the use of CALJIC No. 17.41.1 violated Petitioner's right to a fair trial and due process; (5) the prosecutor committed misconduct in various ways; (6) the trial court failed to inquire into potential jury misconduct; (7) there was insufficient evidence to support his convictions; and (8) his sentence was grossly disproportionate to his crime.

**STANDARD OF REVIEW**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was

---

[1] Petitioner had been charged with two counts of attempted murder and two counts of shooting at an occupied vehicle (Cal. Pen. Code § 246). As noted above, Petitioner was convicted of assault (*id*. § 245), which is, according to the state appellate court, a lesser-related offense of attempted murder.

[2] The trial court ordered that Petitioner serve the indeterminate life sentence at the expiration of the determinate sentence. The trial court also stayed the sentence for an additional enhancement.

2

reviewed on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).

The first prong applies both to questions of law and to mixed questions of law and fact. *Williams v. Taylor*, 529 U.S. 362, 407–09 (2001). The second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. A state court decision is an "unreasonable application of" Supreme Court authority, and thus falls under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A federal court on habeas review may not issue a writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id*. at 409.

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeal, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981). A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Ibid*.

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

3

**DISCUSSION**

**1. LESSER-INCLUDED OFFENSE**

Petitioner claims that his conviction for the uncharged crime of assault with a deadly weapon (Cal. Pen. Code § 245) violated his due process rights because that charge is not a lesser-included offense of attempted murder, the crime with which he had been charged. (Pet., P. & A. at 1.) The state appellate court rejected this claim, finding that because "the jury was properly instructed on assault with a semiautomatic firearm as a lesser *related* offense to murder, we need not consider whether it was also a lesser included offense." (Ans., Ex. 6 at 6.) The Court further notes that the trial court instructed the jury that they could find Petitioner guilty of lesser-included or lesser-related offenses. (*Id.*, Ex. 1(A) at 250.)

Petitioner's claim is without merit. More specifically, Petitioner has not presented any persuasive legal authority that supports his assertion that his being convicted of a lesser-related, as opposed to a lesser-included, offense presents a federal claim. Rather, it presents a question of state law. This Court must defer to the state appellate court's implicit finding that a lesser-related and a lesser-included offense are equivalent for state due process purposes. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (holding that a state court's interpretation of state law binds a federal court sitting in habeas corpus). Petitioner's claim implies that he would not object to a conviction on a lesser-included offense. Because lesser-included and lesser-related offenses are roughly equivalent under state law for due process purposes, the Court finds that Petitioner has not shown an underlying violation of his federal constitutional rights. Accordingly, this claim is DENIED.

**2. FAILURE TO STRIKE POLICE TESTIMONY**

Petitioner claims that the trial court violated his right to due process by refusing to grant Petitioner's motion to strike police testimony that Petitioner had been associated with a car painted burgundy, the color of the car at the crime scene. (Pet., P. & A. at 2.) The state appellate court rejected this claim, finding that the trial court acted within its discretion because the questions posed by counsel were broad and the answers were "arguably responsive." (Ans., Ex. 6 at 9–10.)

4

The facts underlying Petitioner's claim were summarized by the state appellate court as follows:

> [Petitioner] had moved in limine to exclude evidence connecting him with the burgundy car used in the shooting, based on the prosecutor's representation that there was no recorded association between them. At that time, the prosecutor agreed there was no nexus between the vehicle and [Petitioner] outside this case, and was instructed by the court to immediately disclose any such connection should it be found.
>
> During cross-examination of the investigating police officer, defense counsel asked several questions about the lack of physical evidence to connect [Petitioner] with the charged offenses. Regarding the car used in the shooting, counsel inquired: "Is there any way that [Petitioner] is associated in police records with this burgundy automobile?" The officer answered: "I was told that his girlfriend had a burgundy vehicle." The officer did not recall the girlfriend's name, however, and the vehicle was never located despite further investigation. When asked whether [Petitioner] was ever stopped in a burgundy automobile, the officer answered: "Officers had advised me that on several occasions they saw [Petitioner] in a burgundy vehicle, didn't know what make or model."
>
> A bench conference ensued, during which the court denied [Petitioner's] motion to strike the officer's testimony, later explaining it had already warned counsel about broad questioning that would open the door on cross-examination. The court also noted that no prejudice had resulted in view of the follow-up questions, and further remarked that the questioning was very broad, and the resulting testimony "extremely tangential." After his motion to strike was denied, counsel elicited the officer's testimony that no police report or other official document connected [Petitioner] with a burgundy car. The first time the prosecutor heard of the other officers' observations was during the investigating officer's testimony at trial. Defense counsel did not fault the prosecutor or the inspector, stating "any fault would be a lack of communication."

(Ans., Ex. 6 at 8–9.)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). However, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

Applying these legal principles to the instant matter, the Court finds that Petitioner's claim is without merit. More specifically, the Court cannot say that the trial court's failure to strike the

5

officer's testimony resulted in the denial of a fundamentally fair trial. First, defense counsel invited the introduction of the evidence. That is, the evidence was introduced as a response to a question by defense counsel, and not by any action by the trial court or the prosecution. Second, the record indicates that the evidence was extremely weak and only weakly connected to Petitioner, coming in the form of undocumented, anecdotal, and unsubstantiated statements — indeed, the police officer testified that no documentation from the police or the Department of Motor vehicles existed to support a connection between Petitioner and any burgundy vehicle. (Ans., Ex. 2(D) at 224–25.) Third, the probative value of this already weak evidence was further diminished by the testimony of Petitioner's girlfriend who testified that her car had two doors (Nieisha had testified that the car she encountered had four doors), and by a statement by the prosecutor that Petitioner did not use his girlfriend's car in connection with the shooting. (*Id.* at 278, 343.) Based on this record, the Court finds nothing in the record to support a conclusion that the trial court's act resulted in a fundamentally unfair trial. Accordingly, this claim is DENIED.

**3.     INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner presents two claims that defense counsel rendered ineffective assistance in violation of his Sixth Amendment right to counsel. (Pet., P. & A. at 3.)[3] As to both claims, the state appellate court found that Petitioner had failed to demonstrate that defense counsel's alleged errors resulted in prejudice. (Ans., Ex. 6 at 10.)

Claims of ineffective assistance of counsel are examined under *Strickland v.Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id*. at 687–68. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the

---

[3] This section addresses the claims Petitioner numbers as three and seven in his petition.

errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

### A.  FAILURE TO OBJECT TO BURGUNDY CAR EVIDENCE

Petitioner claims that defense counsel rendered ineffective assistance when he failed to object to the police officer's testimony regarding Petitioner's connection to a burgundy car. (Pet., P. & A. at 3.)

Petitioner's claim is without merit. First defense counsel took immediate steps to remedy the situation, after the officer's testimony. Though he did not object in the form Petitioner wanted, defense counsel asked the trial court for a sidebar during which he asked that the testimony be stricken. Because defense counsel took an immediate and appropriate step to address the problem, the Court cannot say that defense counsel's performance was deficient. Furthermore, as discussed above in Section 2, Petitioner has not shown that the introduction of this evidence resulted in prejudice. Accordingly, Petitioner's claim is DENIED.

### B.  FAILURE TO OBJECT TO IDENTIFICATION EVIDENCE

Petitioner claims that defense counsel rendered ineffective assistance when he failed to challenge Dominick's identification of Petitioner, an identification Petitioner contends was tainted by the investigating policeman's "impermissibly suggestive" interrogation. (Pet., P. & A. at 6.)

The facts underlying Petitioner's claim are as follows. Inspector Wells testified that he interviewed Dominick while he was being treated in hospital after the shooting. "Initially the way I discussed with [Dominick] about Montrell Vines was to give a description. I led from that description, from a physical description, complexion, and then name and then ultimately to [a photograph line-up depicting six persons]." (Ans., Ex. 2(D) at 229–30, 231.) According to Wells's testimony, Dominick at first denied knowing who shot at him, "based on fear for himself and his family." Wells testified that after further questioning, Dominick told Wells that an African-American man he knew only as "M.V." was responsible for the shooting. Wells testified that when he "provided [the name] Montrell[, Dominick] said yes, he knew him by that name" and that he had heard that name from his sister Nieisha on the way to the hospital. (*Id*. at 212–13, 229.) When shown a photograph line-up, Dominick identified Petitioner's photograph as that of M.V. though Wells had told Dominick that the alleged perpetrator's photograph may not be

7

present. (*Id.* at 231, 234.) On cross-examination, defense counsel closely questioned Wells on whether his interrogation of Dominick tainted the identification through impermissible suggestion. (*Id.* at 213–21.)

Petitioner's claim is without merit. Though defense counsel did not move to strike Wells's testimony regarding Dominick's identification of Petitioner, the record indicates that defense counsel doggedly cross-examined Wells for some time, eliciting responses that called into question the credibility of Dominick's identification. Based on this record, the Court cannot say that defense counsel's performance was deficient. Also, Petitioner has not demonstrated that defense counsel's performance resulted in prejudice. Not only did defense counsel vigorously cross-examine Wells, but the other evidence supporting Petitioner's guilt — specifically, Nieisha's testimony that she saw Petitioner exit his vehicle and shoot at her — was strong. Accordingly, this claim is DENIED.

**4.   CALJIC 17.41.1**

Petitioner claims the trial court erred in instructing the jury under CALJIC 17.41.1, an instruction "which affirmatively denies that the jurors have the power of nullification or which coerces a minority juror to vote for conviction with the majority." (Pet., P. & A. at 4.)[4] The California Court of Appeal rejected this claim because the California Supreme Court has found that CALJIC 17.41.1 is not unconstitutional. (Ans., Ex. 6 at 10.)

Petitioner's claim is foreclosed by case law. "No Supreme Court case establishes that an instruction such as CALJIC 17.41.1 violates an existing constitutional right." *Brewer v. Hall*, 378 F.3d 952, 956 (9th Cir. 2004). Petitioner has not pointed to any superseding legal authority to support his claim. Accordingly, this claim is DENIED.

**5.   PROSECUTORIAL MISCONDUCT**

Petitioner contends that the prosecutor "made prejudicial factual assertions not supported

---

[4] CALJIC 17.41.1, as read to Petitioner's jury, states: "The integrity of the trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of the other jurors to immediately advise the Court, that's me, of the situation" (Ans., Ex. 2(D) at 368).

8

by any evidence." (Pet., P. & A. at 4.) According to Petitioner, the prosecutor used these assertions to support a victim's credibility, to show that Petitioner's mother could not provide a reliable alibi, and trying to explain away the fact that there was little physical evidence connecting Petitioner to the crime. (*Id.* at 4–5.) The state appellate court ruled against Petitioner on state law grounds. (Ans., Ex. 6 at 11.)

The facts underlying Petitioner's claims are as follows. First, in his closing statement, the prosecutor spoke of a plaque in the courthouse that commemorated a police officer who had died in a shooting unrelated to the instant case.[5] Vouching for Nieisha's credibility, the prosecutor compared the stress that that officer must have suffered to the stress Nieisha must have suffered when Petitioner shot at her: "Nieisha [] could not have made up a lie in that circumstance." (Ans., Ex. 2(D) at 316–18.) Second, at trial, Petitioner's mother provided an alibi for her son, testifying that she remembered Petitioner being at her house at the time of the shootings. Petitioner's mother testified that she recalled this because she was watching a wrestling program at the time. In his closing statement, the prosecutor, calling into question the mother's remembrance of the exact time she saw her son, stated that "the truth is if you have cable, wrestling is on all night, you can't get away from wrestling, I mean every channel." (*Id.* at 339.) Third, the prosecutor tried to explain why there was a lack of physical evidence connecting Petitioner to the crime by suggesting that Petitioner switched cars before the shooting, changed clothing afterward, and disposed of the gun, acts which the prosecutor described as "standard operating procedure." (*Id.* at 342–43.) Finally, the prosecutor, attempting to rebut the suggestion that Nieisha was lying, stated that Nieisha testified with great reluctance. (*Id.* at 345.)

Claims of prosecutorial misconduct are reviewed under the narrow standard of due process and not the broad exercise of supervisory power. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *See id.* Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). A prosecutorial misconduct

---

[5] Respondent misidentifies this quote as coming from the prosecutor's opening statement.

9

1  claim is decided "'on the merits, examining the entire proceedings to determine whether the
2  prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a
3  denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).
4        Applying these legal principles to the instant matter, the Court finds that Petitioner's
5  claims are without merit because he has failed to show that the prosecutor's remarks were
6  improper. An essential part of a prosecutor's — or a defense counsel's — duty is to vouch for the
7  credibility of his witnesses and to attempt to discredit the other party's arguments. Based on the
8  record before the Court, in every instance described above, the prosecutor performed these duties,
9  and there is no evidence to support a claim that his assertions were improper, much less that they
10 were prejudicial. Petitioner's claim is DENIED.

### 6. TRIAL COURT'S FAILURE TO RESPOND TO THE JURY'S NOTE

12       Petitioner claims that the trial court violated his constitutional rights when it failed to hold
13 a hearing regarding possible juror misconduct. (Pet., P. & A. at 5.) The state appellate court
14 apparently did not rule on this claim.
15       The facts underlying Petitioner's claim are as follows. During deliberations, the jury sent
16 the trial court a note that read: "Can we be informed of information regarding the individual
17 juror's security and/or safety following the trial? We would like personal information of any kind
18 restricted from defense, audience, et cetera for our own personal safety." (Ans., Ex. 2(D) at 383.)
19 After the trial court informed the parties of the note's contents, defense counsel moved for a
20 mistrial on the grounds that "the tenor that's portrayed in the note by the jury is one that's framed
21 in fear. The fear is clearly associated with the audience, the people that are outside that are all
22 African-American, that are all supporters of [Petitioner] . . . I think it would be ludicrous to
23 assume anything other than that that note mean that the jurors are scared of [Petitioner's]
24 supporters." (*Id*. at 385.) The trial court denied the motion, finding that it would be "intrusive on
25 the deliberative process" to question the jurors about the note, and that the court had not seen any
26 interactions among the jurors and the courtroom audience that would indicate a basis for juror
27 misconduct. (*Id*. at 389, 390.)
28       The Ninth Circuit has interpreted Supreme Court precedent "as providing a flexible rule"

on whether an evidentiary hearing is required in such a situation. *Tracey v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003) (citation removed). "An evidentiary hearing is not mandated every time there is an allegation of jury misconduct or bias. Rather, in determining whether a hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *Id*. (citation removed). Furthermore, "no Supreme Court precedent holds that a failure to investigate potential juror bias presents structural error." *Sims v. Rowland*, 414 F.3d 1148, 1153 (9th Cir. 2005). "Although the Supreme Court recognized . . . that a trial before a biased judge presents structural error, it has not applied this principle to trials by biased jurors, much less in cases where there is only potential bias." *Id*. (emphases omitted).

Applying these legal principles to the instant matter, the Court finds that Petitioner's claim is without merit. The record does not support Petitioner's assertion that the trial court denied his rights by failing to question the jurors regarding the note. The note's contents contained no indication, or even a strong suggestion, of bias or prejudice, racial or otherwise, nor has Petitioner pointed to any instance during the trial that would support this claim of juror misconduct related to this note. Though defense counsel's accusations of misconduct were serious, Petitioner, other than offering conclusory allegations, simply has not pointed to any evidence that supports his claim. Accordingly, Petitioner's claim is DENIED.

**7.    SUFFICIENCY OF EVIDENCE**

Petitioner contends that there was insufficient the evidence to support a finding that Petitioner was guilty of the charged offenses beyond a reasonable doubt. (Pet., P. & A. at 7.) More specifically, Petitioner alleges that Dominick's identification was not reliable and that the evidence shows that Petitioner was elsewhere when the crimes occurred. (*Id*.) The state appellate court apparently did not rule on this claim.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence

11

in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *See id*. (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *See Jackson*, 443 U.S. at 324.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume — even if it does not affirmatively appear on the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

Applying these legal principles to the instant action, the Court finds that Petitioner's claim is without merit. As to his assertions about Dominick's identification and the alibi evidence, this Court must defer to the jury's apparent finding that Dominick's evidence was credible and that the alibi evidence was not. The Court must further assume that the jury resolved all alleged conflicts in the evidence in favor of the prosecution. Furthermore, the Court cannot say that no rational trier of fact could have found guilt of attempted murder and assault beyond a reasonable doubt. The elements of attempted murder are (a) the specific intent to commit murder, and (b) a direct ineffectual act done towards its commission. *See* Cal. Pen. Code §§ 664 & 187. Murder is the unlawful, unjustified killing of another human with malice aforethought. *Id*. § 187. Assault with a firearm is an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another with a firearm. *Id*. §§ 240, 245(b). Evidence was presented at trial by way of Nieisha's testimony that Petitioner fired at the car in which Nieisha and Dominick sat, and that Nieisha was in fact struck twice by bullets. From this, a reasonable juror could find that Petitioner shot at the victims with the intention to kill them. A reasonable juror could also find that this evidence indicated that Petitioner had the unlawful intent and present ability to commit an injury with the gun upon the victims. Based on this record, the Court finds no violation of Petitioner's constitutional rights. Accordingly, this claim is DENIED.

**8.    PROPORTIONALITY OF SENTENCE**

Petitioner claims that his forty-seven years-to-life sentence violates the Eighth

12

1  Amendment's protections against cruel and unusual punishment because the secondary offense
2  (viz., the assault) resulted from the primary offense, viz., the attempted murder. (Pet., P. & A. at
3  7–8.) As noted above, the trial court sentenced Petitioner to twenty-one years in state prison for
4  the assault conviction, and to life in prison, with an additional twenty-five year term for causing
5  great bodily injury with a firearm, for the attempted murder conviction. The state appellate court
6  apparently did not rule on this claim.

7  A criminal sentence that is not proportionate to the crime for which the defendant was
8  convicted violates the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277, 303 (1983). "[O]utside
9  the context of capital punishment" however, "successful challenges to the proportionality of
10 particular sentences will be exceedingly rare." *Id*. at 289–90. "The Eighth Amendment does not
11 require strict proportionality between crime and sentence. Rather, it forbids only extreme
12 sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23
13 (2003).

14 A challenge to the proportionality of a sentence is analyzed using objective criteria,
15 including: (1) the gravity of the offense and harshness of the penalty; (2) a comparison of
16 sentences imposed on other criminals in the same jurisdiction; and (3) a comparison of sentences
17 imposed for the same crime in other jurisdictions. *Solem*, 463 U.S. at 290–92. Where, however, it
18 cannot be said as a threshold matter that the crime committed and the sentence imposed are grossly
19 disproportionate, it is not appropriate for the court to engage in a comparative analysis of the
20 sentence received by the defendant and the sentences received by other defendants in other cases.
21 *See United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998).

22 Applying these legal principles to the instant matter, the Court finds that Petitioner's claim
23 is without merit. First, Petitioner's contention that his sentence is grossly disproportionate in
24 violation of the Eighth Amendment is essentially foreclosed by the Supreme Court's decisions in
25 *Ewing* and *Lockyer v. Andrade*, 538 U.S. 63 (2003). As the Supreme Court observed in *Andrade*,
26 Eighth Amendment jurisprudence "gives legislatures broad discretion to fashion a sentence that
27 fits within the scope of the proportionality principle — the precise contours of which are unclear."
28 *Andrade*, 538 U.S. at 76 (internal quotations and citations omitted). Consistent with such

13

deference, the Supreme Court, in each of those cases, upheld the application of California's "Three Strikes" law to non-violent theft crimes. Andrade's final commitment offense, for example, was his theft of videotapes from two stores, the total value of such merchandise being $150. *Id*., 538 U.S. at 66. Because Andrade had a prior misdemeanor conviction, he was charged with two felony counts of petty theft. *Id*. at 67–68. After conviction on these charges, the trial court sentenced Andrade to two consecutive terms of twenty-five years-to- life under the Three Strikes law, a sentence the Supreme Court upheld as constitutional. *Id*. at 77.

If Andrade's sentence of fifty years-to-life for the non-violent crime of stealing videotapes passes constitutional muster, Petitioner's sentence of forty-seven years-to-life for these violent offenses cannot be said to be unconstitutional. Put another way, in light of such authority, Petitioner has not established his sentence was grossly disproportionate to his crimes. Because Petitioner has not made the threshold showing that his sentence is grossly disproportionate to his crimes, this Court's analysis is at an end. *See Harris*, 154 F.3d at 1084.

As to all Petitioner's claims, the Court concludes that the state court's determinations were not contrary to, or unreasonable applications of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. 2254 (d)(1), (2). Accordingly, Petitioner's claims are denied.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: February 11, 2009

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

VINES,

        Plaintiff,

  v.

KANE et al,

        Defendant.

Case Number: CV05-05316 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 11, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Montrell Vines T26681
CMF
P.O. Box 2000 H-206
Vacaville, CA 95696-2000

Dated: February 11, 2009

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk